UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YITTEL BIENER, *individually and on behalf of all others similarly situated*,

                                        Plaintiff,

        v.

CREDIT CONTROL SERVICES, INC. d/b/a CREDIT COLLECTION SERVICES (CCS),

                                        Defendant.

---

No. 21-CV-2809 (KMK)

<u>OPINION & ORDER</u>

Jonathan M. Cader, Esq.
Kara S. McCabe, Esq.
Craig B. Sanders, Esq.
Sanders Law Group, LLC
Garden City & Uniondale, NY
*Counsel for Plaintiff*

Matthew B. Johnson, Esq.
Gordon Rees Scully Mansukhani, LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Yittel Biener ("Plaintiff") brings this putative class action against Credit Control Services Inc. d/b/a Credit Collection Services ("Defendant" or "CCS"), alleging that Defendant engaged in unlawful credit and collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*  (*See* Compl. (Dkt. No. 1).)  Before the Court is Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (*See* Def.'s Not. of Mot. (Dkt. No. 47).)  For the foregoing reasons, Defendant's Motion to

Dismiss is granted and Defendant's alternative Motion for Summary Judgment is denied as moot.

## I.  Background

### A.  Factual Background

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  "[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).  A court may "base[ ] its decision solely on the allegations of the complaint and the undisputed facts evidenced in the record." *Trustees of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566–67 (2d Cir. 2016) (emphasis added).  As such, the following facts are derived from the Complaint, (*see* Compl.), the undisputed facts in the Parties' submissions pursuant to Local Rule 56.1, (*see* Def.'s Rule 56.1 Statement ("Def's 56.1") (Dkt. No. 50); Pl.'s Rule 56.1 Counter-Statement ("Pl's Counter 56.1") (Dkt. No. 54); Reply Mem. of Law in Supp. of Mot. ("Def's Reply") (Dkt. No. 57)), and the admissible

evidence submitted by the Parties.[1]  The facts as described below are in dispute only to the extent

indicated.[2]

_____

[1] As noted by Defendant, "Local Rule 56.1 does not explicitly contemplate a reply to Plaintiff's Response" to Defendant's 56.1.  (Def's Reply 2.)  While "Local Civil Rule 56.1 does not provide for a 'reply' in further support of a Rule 56.1 statement of undisputed facts," it also "does not prohibit such replies."  *Cap. Rec., LLC v. Vimeo, LLC*, No. 09-CV-10101, 2018 WL 4659475, at *1 (S.D.N.Y. Sept. 7, 2018).  Defendant has indeed replied to some of Plaintiff's newly asserted undisputed facts in its Reply memorandum, (*see* Def's Reply 2–4), which this Court will construe as a reply to those facts.

To the extent that Defendant does not discuss particular statements put forth by Plaintiff in its Reply, the Court will consider those undisputed (despite the lack of citation to Defendant's reply).  However, the Court will consider Defendant's reply to the extent that it responds to the new facts raised by Plaintiff in her response, including Plaintiff's additional statements of undisputed facts and any new evidence introduced in Plaintiff's response.  *See Roth v. Cheesecake Factory Rests., Inc.*, No. 19-CV-6570, 2021 WL 1103505, at *2 (S.D.N.Y. Feb. 5, 2021) (considering only facts asserted in response to new facts raised in the non-movant's response), *report and recommendation adopted*, 2021 WL 912416 (S.D.N.Y. Mar. 10, 2021); *Cunningham v. Cornell Univ.*, No. 16-CV-6525, 2019 WL 4735876, at *1 n.3 (S.D.N.Y. Sept. 27, 2019) ("The Court will not consider . . . [the] [d]efendants' [r]eply except to the extent it responds to new facts in [the] [p]laintiffs' [c]ounterstatement."); *Pape v. Dircksen & Talleyrand Inc.*, No. 16-CV-5377, 2019 WL 1435882, at *3 (E.D.N.Y. Feb. 1, 2019) (concluding that "the [c]ourt declines to consider the [r]eply Rule 56.1 Statement, except to the extent it responded to [] new facts"), *report and recommendation adopted*, 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019).

[2] Where the Parties "identify disputed facts but with semantic objections only or by asserting irrelevant facts, . . . which do not actually challenge the factual substance described in the relevant paragraphs, the [c]ourt will not consider them as creating disputes of fact."  *N.J. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6173, 2021 WL 965323, at *2 n.1 (S.D.N.Y. Mar. 15, 2021) (quotation marks and citation omitted); *see also Nimkoff v. Drabinsky*, No. 17-CV-4458, 2021 WL 4480627, at *1 n.2 (E.D.N.Y. Sept. 30, 2021) ("[T]o the extent a party's Rule 56.1 statement improperly interjects arguments and/or immaterial facts in response to facts asserted by the opposing party without specifically controverting those facts [with admissible evidence], the [c]ourt has disregarded the statement." (quotation marks, alterations, and citation omitted)); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Many of [the] [p]laintiff's purported denials—and a number of [the plaintiff's] admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by [the] [d]efendant[], often speaking past [the] [d]efendant['s] asserted facts without specifically controverting those same facts. . . .  [A] number of [the] [p]laintiff's purported denials quibble with [the] [d]efendant['s] phraseology, but do not address the factual substance asserted by [the] [d]efendant[].").  Similarly, when a Party objects to the inclusion of a statement solely on the basis that the statement asserts a fact that is "immaterial," the Court will not consider this technicality as creating a dispute.  *See O'Donnell v. Card*, No. 11-CV-3297, 2013 WL 3929632, at *2 n.9 (S.D.N.Y. July 30, 2013) (deeming the

Plaintiff is a citizen of the New York, residing in Orange County.  (Compl. ¶ 5.)

Defendant is a Massachusetts Corporation with its principal place of business in Norfolk County,

Massachusetts.  (*Id*. ¶ 8.)  Plaintiff alleges that Defendant "regularly collects or attempts to

collect debts asserted to be owed by others[,]" or otherwise is in the business of "collection of

debts."  (*Id*. ¶¶ 16–20.)  As relevant to the instant action, "Defendant alleges Plaintiff owes a

debt . . . aris[ing] from personal medical services provided to Plaintiff."  (*Id*. ¶¶ 21–25.)

Plaintiff is "a Medicaid Beneficiary" whose Medicaid insurance provider is Fidelis.

(Pl's Counter 56.1 ¶¶ 11–12.)  "Plaintiff has been a recipient of Medicaid Benefits under New

York State Law since approximately 2010."  (*Id*. ¶ 13.)   On or about February 14, 2020,

"Plaintiff received laboratory services from Empire City Laboratories ("Empire")."  (Def's 56.1

¶ 1; Pl's Counter 56.1 ¶ 1.)  While the Parties seem to dispute who holds the particular debt

based on where the actual services took place, (*see* Pl's Counter 56.1 ¶¶ 14; Def's Reply 2), the

Parties agree that "Plaintiff did not physically present to Empire" for the laboratory testing on

that day, (Pl's Counter 56.1 ¶ 15).  On the day of the service in question, "Plaintiff received an

in-office procedure which Plaintiff was advised required laboratory testing."  (*Id*. ¶ 17.)  After

the procedure, the sample was sent to Empire for further testing.  (*Id*. ¶ 18.)  Plaintiff was not

involved in choosing which laboratory would receive the test sample, nor did Plaintiff know

whether the testing would be done on-site where the procedure was completed, or at an off-site

facility.  (*Id*. ¶¶ 19–20.)  These services gave rise to a $250 bill; however, Plaintiff disputes the

---

plaintiff's "version of the facts admitted" where "[the] [d]efendant does not clearly deny these
facts in his response, but rather claims that [the fact's inclusion] is 'immaterial' and fails to cite
to the record").

       Where possible, the Court has relied on the undisputed facts—or what the Court has
deemed undisputed facts—in the Parties' 56.1 submissions.  However, direct citations to the
record have also been used where relevant facts were not included in any of the Parties' Rule
56.1 submissions or where the Parties did not accurately characterize the record.

extent of her monetary obligation and to who that obligation may have been owed.  (Def's 56.1 ¶ 2; Pl's Counter 56.1 ¶ 2.)

Plaintiff disputes ever receiving a bill from Empire for the services she received, (*see* Def's 56.1 ¶ 3; Pl's Counter 56.1 ¶ 3), however both Parties agree that the bill was placed with CCS for collection, (Def's 56.1 ¶ 4; Pl's Counter 56.1 ¶ 4).  On August 8, 2020, CCS sent Plaintiff a letter requesting the outstanding payment.  (Def's 56.1 ¶ 5; Pl's Counter 56.1 ¶ 5).  On or about August 26, 2020 ("the August 2020 call"), CCS called Plaintiff to discuss the payment at issue.  (Pl's Counter 56.1 ¶ 23.)  During this call, Plaintiff told the collection representative from CCS that she was a Medicaid beneficiary.  (*Id*. ¶¶ 24–25.)  CCS's notes from the August 2020 call reflect Plaintiff's statement, noting that there is a "Medicare/Medicaid Dispute" on Plaintiff's account.  (*Id*. ¶ 27.)  CCS sent at least four additional letters to Plaintiff after the August 2020 call, requesting the outstanding payment.  (*Id*. ¶ 28.)  Plaintiff never paid the $250 bill to either CCS or Empire.  (Def's 56.1 ¶ 6; Pl's Counter 56.1 ¶ 6.)  CCS in turn reported the alleged debt to all three credit reporting bureaus.  (Pl's Counter 56.1 ¶ 29.)

Plaintiff asserts that she was misled by CCS' actions and fears that, "without the Court's intervention, CCS will continue its allegedly unlawful means to attempt to collect" the debt and cause her future economic harm.  (Def's 56.1 ¶ 7; Pl's Counter 56.1 ¶ 7.)  Specifically, Plaintiff asserts that CCS' debt collection efforts have "caused Plaintiff and Plaintiff's [h]usband fear of the negative credit reporting."  (Pl's Counter 56.1 ¶ 30.)  "As a result of CCS'[s] conduct, Plaintiff asserts that she was forced to retain counsel, incur attorney's fees[,] and expend time and money to investigate whether her debt was collectible."  (Def's 56.1 ¶ 8; Pl's Counter 56.1 ¶ 8.)  Plaintiff appears to be requesting statutory damages, rather than actual damages.  (Def's 56.1 ¶ 10; Pl's Counter 56.1 ¶ 10.)

### B.  Procedural History

Plaintiff filed her Complaint on April 1, 2021.  (*See* Compl.)  Defendant filed an answer to the Complaint on May 7, 2021.  (Dkt. No. 9.)  After completing discovery, Defendant filed a pre-motion letter in anticipation of filing a motion for judgment on the pleadings on March 23, 2022.  (Dkt. No. 41.)  On April 15, 2022, Defendant filed another pre-motion letter in anticipation of filing a motion for summary judgment.  (Dkt. No. 42.)  After receiving Plaintiff's response, (Dkt. No. 43), the Court held a pre-motion conference on May 25, 2022 and adopted a briefing schedule, (*see* Dkt. (minute entry for May 25, 2022); Order (Dkt. No. 46).)

On June 9, 2022, Defendant filed the instant Motion.  (*See* Not. of Mot.; Def's 56.1; Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 48); Aff. of Matthew B. Johnson in Supp. of Mot. (Dkt. No. 49).)  After an extension of time, (Dkt. No. 52), Plaintiff filed her Opposition on July 1, 2022, (*see* Mem. of Law in Opp. to Mot. ("Pl's Opp.") (Dkt. No. 53); Pl's 56.1; Decl. of Yittel Biener in Opp. ("Biener Decl.") (Dkt. No. 55); Decl. of Kara S. McCabe in Opp. ("McCabe Decl.") (Dkt. No. 56)), and on July 11, 2022, Defendant filed its Reply, (*see* Def's Reply).

## II.  Discussion

### A.  Standard of Review

#### 1.  Rule 12(b)(1)

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte.  If subject matter jurisdiction is lacking, the action must be dismissed."  *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000); *see also Wells Fargo Bank v. 5615 Northern LLC*, No. 20-CV-2048, 2022 WL 15523689, at *3 (S.D.N.Y. Oct. 27, 2022) (citing *Lyndonville*).  "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the

complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks

omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a

claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl.*

*Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *see also United States v.*

*Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold

question" (quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant

to Rule 12(b)(1) may be facial or fact-based.  *See Carter*, 822 F.3d at 56.  When a defendant

raises a facial challenge to standing based solely on the complaint and the documents attached to

it, "the plaintiff has no evidentiary burden," *id.* (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*,

671 F.3d 140, 145 (2d Cir. 2011)), and a court must determine whether the plaintiff asserting

standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to

sue," *id.* (alterations omitted) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir.

2009)).  In making such a determination, a court must accept as true all allegations in the

complaint and draw all inferences in the plaintiff's favor.  *Id*. at 57.  However, where a Rule

12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff

must either come forward with controverting evidence or rest on the pleadings if the evidence

offered by the defendant is immaterial.  *See Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d

Cir. 2017).  "If the extrinsic evidence presented by the defendant is material and controverted,

the . . . [C]ourt must make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d

at 57.

2.  Summary Judgment

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the [C]ourt must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 355 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a

8

motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting FED. R. CIV. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal

knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at \*5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (quotation marks omitted)).

    B.  Analysis

      Plaintiff brings one cause of action under the FDCPA based on Defendant's conduct as outlined above. (*See* Compl.) Defendant argues that this Action should be dismissed because Plaintiff fails to assert that she suffered any concrete harm and thus lacks standing under Article III. (*See* Def's Mem. 5–10.) In the alternative, Defendant argues that it is entitled to summary judgment because Plaintiff "failed to make a sufficient showing regarding essential elements of her claim for improper balance billing under the FDCPA." (*See id.* at 10–14.) Plaintiff, in opposing Defendant's Motion, argues that she does have Article III standing, (*see* Pl's Opp. 5–8), and that she has established the essential elements of her claim, (*see id.* at 8–15.) The Court addresses these arguments as necessary to resolve the instant Motion.

      1.  Standard for Constitutional Standing

      Standing asks "whether the litigant is entitled to have the [C]ourt decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "This inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Id.*; *see also All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) ("Although lack of Article III standing and subject matter jurisdiction are distinct concepts, Article III standing remains, as we have noted, a limitation on the authority of a federal court to exercise jurisdiction." (citation omitted)); *cf. Cortland St. Recovery Corp. v. Hellas Telecomms, S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015) ("A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff

lacks constitutional standing[.]" (quotation marks and citation omitted)). "Constitutional

standing refers to the requirement that parties suing in federal court establish that a 'Case' or

'Controversy' exists within the meaning of Article III of the United States Constitution." *Am.*

*Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016). Constitutional

standing requires:

> (1) that the plaintiff ha[s] suffered an "injury in fact"—that is, "an invasion of a
> legally protected interest which is (a) concrete and particularized and (b) actual or
> imminent, not conjectural or hypothetical,"; (2) that there is "a causal connection
> between the injury and the conduct" of which the plaintiff complains; and (3) that
> it is "likely . . . that the injury will be redressed by a favorable decision."

*Id.* (second alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61

(1992)).

      "The party invoking federal jurisdiction bears the burden of establishing these elements."

*Lujan*, 504 U.S. at 561. And, the plaintiff's burden to establish constitutional standing changes

over each successive stage of the litigation, commensurate with the changing standards on

dispositive motion practice. The Supreme Court has explained:

> At the pleading stage, general factual allegations of injury resulting from the
> defendant's conduct may suffice, for on a motion to dismiss, we presume that
> general allegations embrace those specific acts that are necessary to support the
> claim. In response to a summary judgment motion, however, the plaintiff can no
> longer rest on such mere allegations, but must set forth by affidavit or other
> evidence specific facts, which for purposes of the summary judgment motion will
> be taken to be true. And at the final stage, those facts (if controverted) must be
> supported adequately by the evidence adduced at trial.

*Id.* (quotation marks, alterations, and citations omitted); *see also Carter*, 822 F.3d at 56 (same);

*Denson v. Donald J. Trump for President, Inc.*, 530 F. Supp. 3d 412, 425 (S.D.N.Y. 2021)

(same).

      The Supreme Court recently issued a decisive ruling on the issue of constitutional

standing in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), which, along with *Maddox v.*

*Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58 (2d Cir. 2021), make clear that plaintiffs who

allege only a "procedural" or "informational harm" lack standing.  *See Adler v. Penn Credit*

*Corp.*, No. 19-CV-7084, 2022 WL 744031, at *6–8 (S.D.N.Y. Mar. 11, 2022).

      *TransUnion* involved a class of 8,185 plaintiffs who alleged that TransUnion, a credit

reporting agency, had violated the Fair Credit Reporting Act ("FCRA") via its use of a system

that had inaccurately flagged the plaintiffs' credit files as "potential match[es]" to persons

identified as national security risks by the Treasury Department's Office of Foreign Assets

Control ("OFAC").  *See id.* at 2200–02.  The Supreme Court ultimately bifurcated the class,

finding that the 1,853 class members whose inaccurately flagged credit reports had been

disseminated to third parties had standing, because they had suffered a harm "associated with the

tort of defamation," and the 6,332 class members whose inaccurately flagged credit reports were

never disseminated did not have standing, because "[p]ublication is essential to liability in a suit

for defamation."  *Id.* at 2208–09 (quotation marks omitted).  In short, the Supreme Court held:

"No concrete harm, no standing."  *Id.* at 2200; *see also Adler*, 2022 WL 744031, at *6

(discussing *TransUnion*).

      *Maddox* involved two plaintiffs who alleged that the Bank of New York Mellon ("BNY

Mellon") had failed to file their satisfaction of mortgage within 30 days of the plaintiffs' full

satisfaction of their mortgage loan, as required under New York's satisfaction-of-mortgage

statutes.  *Maddox*, 19 F.4th at 59–60.  The Second Circuit had initially ruled, in a pre-

*TransUnion* opinion, that the plaintiffs' allegations had established an injury in fact sufficient to

confer constitutional standing, since BNY Mellon's violation of the statutes "exposed [the

plaintiffs] to a material risk of concrete harm, including the risk of not being able to borrow

during the period of delay."  *Id.* at 62 (quotation marks and alteration omitted).  After this

opinion, however, BNY Mellon filed a petition for rehearing and the Supreme Court decided *TransUnion*, leading the Second Circuit to withdraw its previous opinion and rule that because the mortgagor-plaintiffs failed to allege that they had actually suffered any reputational harm (including or in addition to any adverse credit reporting) or monetary harm during the lender-defendant's delay in recording the plaintiffs' satisfaction of the mortgage loan, they lacked standing.  *Id.* at 64–66; *see also Adler*, 2022 WL 744031, at *7 (discussing *Maddox*).

District courts following *TransUnion* and *Maddox* who have assessed claims brought pursuant to both the FDCPA and the FCRA, "an analogous statute," *Adler*, 2022 WL 744031, at *8 (quoting *Sputz v. Alltran Fin., LP*, No. 21-CV-4663, 2021 WL 5772033, at *6 (S.D.N.Y. Dec. 5, 2021)), have uniformly held that absent specific evidence of reputational or monetary harm, plaintiffs lack constitutional standing, *see, e.g.*, *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) (holding, in FCRA context, that "conclusory allegations" of "mental and emotional pain, anguish, humiliation, and embarrassment of credit denial," without more, cannot confer constitutional standing); *Williams v. Portfolio Recovery Assocs.*, Nos. 21-CV-5656, 21-CV-5662, 21-CV-5968, 21-CV-5970, 2022 WL 256510, at *3 (E.D.N.Y. Jan. 27, 2022) (dismissing the plaintiffs' FDCPA claims due to lack of subject matter jurisdiction, finding that by alleging only that the plaintiffs' inaccurate credit data (and related information) was provided by the defendant to a third-party vendor, "no actual tangible harm" was alleged by the plaintiffs); *Ciccone v. Cavalry Portfolio Servs., LLC*, Nos. 21-CV-2428, 21-CV-3764, 2021 WL 5591725, at *3–5 (E.D.N.Y. Nov. 29, 2021) (dismissing the plaintiffs' FDCPA claims where the plaintiffs "ha[d] not sufficiently alleged a concrete injury in fact sufficient to confer Article III standing" based on a "mailing-vendor" theory, and noting that "sister courts, within and without the Second Circuit, have dismissed FDCPA actions invoking

the mailing-vendor theory for lack of Article III standing"); *see also Adler*, 2022 WL 744031, at

*7–8 (reviewing cases in which courts have dismissed claims on standing grounds where the

plaintiffs failed to allege a concrete harm).

### 2. Application

Here, Plaintiff has wholly failed to demonstrate that she suffered any concrete harm

sufficient to give rise to Article III standing. To start, Plaintiff's Complaint alleges that she

"fears that, absent this Court's intervention, Defendant will continue to use abusive, deceptive,

unfair[,] and unlawful means in its attempts to collect this debt," in addition to fears of possible

future economic harm and attorneys' fees expended in bringing this action. (Compl. ¶¶ 41–44.)

However, the Supreme Court in *TransUnion* conclusively foreclosed standing for FDCPA claims

based on the "mere risk of future harm." *TransUnion*, 141 S. Ct. at 2210–13 (agreeing that "[i]f

the risk of future harm does not materialize, then the individual cannot establish a concrete harm

sufficient for standing" (emphasis omitted)); *see also Gross v. TransUnion, LLC*,

607 F. Supp. 3d 269, 273 (E.D.N.Y. 2022) (explaining that "[t]he only allegations that could

support standing in the complaint are that [the] plaintiff suffered an 'injury to his credit

worthiness,' 'increased difficulty obtaining credit,' and 'embarrassment, humiliation, and other

emotional injuries,'" and that "these conclusory allegations are insufficient" to demonstrate

standing); *Wan v. Trans Union LLC*, No. 22-CV-115, 2022 WL 955290, at *1–2 (E.D.N.Y. Mar.

30, 2022) (finding no standing because (1) "[the] [p]laintiff's allegations that she suffered

'limited credit opportunities' and harm to her 'otherwise positive credit' do not constitute

concrete injury" absent "an allegation that these circumstances resulted in a materialized injury[]

or a sufficiently imminent and substantial risk of injury" and (2) "[the] [p]laintiff's allegations

that inaccurate information about her was distributed . . . to one or more third parties similarly

does not constitute concrete injury because the complaint does not clearly allege any facts

demonstrating disclosure to third parties" (quotation marks omitted)).  Nor can Plaintiff rely on

attorneys' fees to confer standing.  *Pollak v. Portfolio Recovery Assocs. LLC*, No. 21-CV-6738,

2022 WL 580946, at *1 (E.D.N.Y. Feb. 24, 2022) ("[T]he burdens of bringing a lawsuit cannot

be the sole basis for standing."); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

108 (1998) ("[R]eimbursement of the costs of litigation cannot alone support standing.").

      In response to Defendant's Motion, Plaintiff raises for the first time in her briefing before

this Court a dissemination-based theory of standing under the FDCPA.  (Pl's Opp. 5.)

Specifically, Plaintiff argues that Defendant "reported the alleged Debt to all three credit

reporting bureaus" and a declaration filed with Plaintiff's briefing "states that hard inquiries were

made after the date" Defendant reported the debt.  (*Id*.)  In addition, Plaintiff alleges that she

"engaged the services of a credit repair agency at her own cost and expense in an effort to

rehabilitate her incorrect credit report[,]" giving rise to a harm separate from the statutory

violation.  (*Id*.)  However, these arguments conclusively fail for several reasons.

      As an initial matter, this Court has previously held that dissemination of credit reports to

traditional credit reporting agencies are "not the type of third parties contemplated by the

Supreme Court in *TransUnion*," stating that the Supreme Court "clearly contemplated potential

creditors."  *Spira v. Trans Union, LLC*, No. 21-CV-2367, 2022 WL 2819469, at *5 (S.D.N.Y.

July 19, 2022); *see also TransUnion*, 141 S. Ct. at 2210 ("The standing inquiry in this case thus

distinguishes between (i) credit files that consumer reporting agencies maintain internally and (ii)

the consumer credit reports that consumer reporting agencies disseminate to third-party creditors.

The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party,

causes no concrete harm."); *Campbell v. Portfolio Recovery Assocs.*, No. 21-CV-1322, 2022 WL

657225, at *2 (E.D.N.Y. Mar. 4, 2022) ("[T]he distribution of inaccurate information to a credit

reporting agency, as opposed to a potential creditor, . . . does not constitute or cause concrete injury for standing purposes."). As such, Defendant's reporting of the debt to the three major credit reporting agencies on its own cannot establish a concrete injury.

To cure this deficiency, Plaintiff argues that her declaration asserts that "hard inquiries were made after the date of Defendant's reporting of the fictitious debt." (Pl's Opp. 5.) To be sure, if such inquiries were alleged, Plaintiff may have pled enough to confer standing through hard inquiries by third-party creditors. *See Maddox*, 19 F.4th at 65 ("There could be no doubt that the third-party businesses viewed those credit reports, which they had specifically requested and paid for."). However, beyond the fact that Plaintiff never pled a dissemination theory in her Complaint, (*see generally* Compl.), *neither declaration* filed by Plaintiff's counsel in opposition to the instant Motion *actually states* that there were hard inquiries on Plaintiff's report. (*See generally* Biener Decl.; McCabe Decl.) Moreover, the Court is skeptical that a statement in Plaintiff's declaration stating that there indeed were hard inquiries—absent additional evidence such as a credit report actually showing those hard inquiries—would be sufficient to confer standing in the face of a Rule 12(b)(1) challenge. *See Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976) ("[J]ust as under Rule 56, a party opposing a Rule 12(b)(1) motion cannot rest on the mere assertion that factual issues may exist." (citation omitted)); *Moschetto v. U.S.*, 961 F. Supp. 92, 96 (S.D.N.Y. 1997) (citing *Exchange Nat'l Bank* to find that declarations are insufficient to defeat a jurisdictional motion).

Finally, Plaintiff attempts to allege a "materialized injury" in the form of economic harm from hiring a credit repair agency after Defendant reported the debt. (Pl's Opp. 5.) Again, as Defendant points out, both Plaintiff's Complaint and declarations in opposition to this Motion are wholly insufficient. (*See* Def's Reply 4.) Plaintiff did not plead this in her Complaint, (*see*

16

*generally* Compl.), and Plaintiff's declaration does not actually state that she or her husband paid

any funds to a credit repair agency, (*see* Biener Decl. ¶¶ 27–29). Instead, Plaintiff asserts that

her "husband contacted a Credit Repair Agency on [Plaintiff's] behalf" without asserting any

specific monetary damages to cure the harms from the alleged incorrectly reported debt. (*Id*. ¶

29.) "[A]lthough efforts to mitigate a sufficient risk of harm stemming from a statutory violation

may qualify as concrete injuries, Plaintiff has not alleged any underlying harm or risk of harm

that supports treating the cost of [her] mitigation efforts as a concrete injury" sufficient to confer

standing. *Pollak*, 2022 WL 580946, at *1 (citation omitted) (collecting cases).

Accordingly, Plaintiff does not have Article III standing to pursue her FDCPA claims and

thus, the Court lacks subject matter jurisdiction over this Action. *See, e.g.*, *Adler*, 2022 WL

744031, at *11 ("As [the] [p]laintiff has not demonstrated any concrete injury sufficient to

support standing under the Second Circuit's precedent in *Maddox*, the [c]ourt lacks subject

matter jurisdiction over this [a]ction.").[3]

---

[3] Plaintiff also appears to argue that the Court should not dismiss this case for lack of subject matter jurisdiction because it "would not serve the interests of judicial economy" for two reasons: (1) Plaintiff argues that "any deficiency found in the Complaint as to the additional harms suffered would be curable[] based on the statements set forth in Plaintiff's Declaration[,] and (2) "because discovery has been completed and this case will be trial ready if summary judgment is not granted on the merits, a dismissal without prejudice would merely burden the [P]arties and the State Court with litigating this case anew." (Pl's Opp. 7.)

As discussed above, the Court finds Plaintiff's declaration insufficient. And, while the Court recognizes the "burdens" on the Parties to litigate this case again in state court, this is a burden solely of Plaintiff's own making. As Plaintiff herself states in her briefing, "[w]ithout jurisdiction [a] court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the ca[u]se." *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). (*See also* Pl's Opp. 11 (citing *Steel Co.*.) As such, the Court will—as it must—dismiss this case without prejudice, and Plaintiff may choose how she would like to proceed, either in federal or state court.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss and denies Defendant's alternative Motion for Summary Judgment as moot.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 47).

"[W]hen a case is dismissed for lack of federal subject matter jurisdiction, 'Article III deprives the court of the power to dismiss the case with prejudice.'"  *Katz*, 872 F.3d at 121 (quoting *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) (alterations omitted)).  Therefore, dismissal of this action is without prejudice.  Plaintiff may file a second amended complaint within 30 days of the date of this Opinion & Order. Failure to properly and timely amend will likely result in dismissal of the claims against Plaintiff with prejudice.

SO ORDERED.

Dated:   March 14, 2023
         White Plains, New York

_____
        KENNETH M. KARAS
      United States District Judge

18